IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA PAGLIACCETTI | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | NO. 09-1106 |
| THE CITY OF PHILADELPHIA, POLICE OFFICER ANTHONY COLARULO, Badge #7162 Individually and in His Capacity as a Police Officer of the City of Philadelphia; POLICE OFFICER CHRIS LAI, Badge #6850 Individually and in His Capacity as a Police Officer of the City of Philadelphia; POLICE OFFICER DEMAS, Assigned to 4th District of Philadelphia Police Department on March 13, 2007 Individually and in His/her Capacity as a Police Officer of the City of Philadelphia, the First Name of Officer Demas Is Not Presently Known; POLICE OFFICER THOMAS Assigned to 4th District of Philadelphia Police Department on March 13, 2007, The First Name of Officer Thomas Is Not Presently Known Defendants. | : | |

**DuBOIS, J.**  August 12, 2010

**M E M O R A N D U M**

I.  **Introduction**

This case arises out of the March 13, 2007, detention of plaintiff, Patricia Pagliaccetti, on the 2400 block of South Marshall Street in Philadelphia, Pennsylvania. Plaintiff alleges five causes of action against defendants, the City of Philadelphia, Police Officer Anthony Colarulo, Police Officer Chris Lai, Police Officer Dennis Demas, and Police Officer John Thomas: (1)

violation of 42 U.S.C. § 1983; (2) conspiracy in violation of 42 U.S.C. § 1985; (3) assault; (4) false imprisonment; and, (5) false arrest. The Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

Presently before the Court is defendants' Motion for Summary Judgment, which the Court grants, for the reasons set forth below.

## II. Background[1]

On March 13, 2007, Charles Cory Vaughn was driving his taxicab when plaintiff's husband, Frank Pagliaccetti ("Pagliaccetti"), waived and pointed a gun at him. (Defs.' Statement of Undisputed Facts ¶ 1 (hereinafter "Defs.' Stmt.").) Vaughn recorded Pagliaccetti's license plate number and called the police. (Id. ¶ 2.) Vaughn told Philadelphia Police Officer Chris Lai ("P.O. Lai"), the responding officer, that a white male, driving a green Honda with Pennsylvania license plate number EDP0639, pulled up next to him and pointed a gun at him. (Id. ¶¶ 3-5.) After taking Vaughn's statement, P.O. Lai broadcasted the details of the incident over the police radio. (Id. ¶ 6.)

Philadelphia Police Officer Anthony Colarulo ("P.O. Colarulo") heard P.O. Lai's radio flash and used the computer in his patrol car to ascertain the address associated with PA Tag EDP0639. (Id. ¶ 9.) According to the Bureau of Motor Vehicles, the address for PA Tag EDP0639 was in the 2400 block of South Marshall Street. (Id. ¶ 10.) P.O. Colarulo and Philadelphia Police Officer Dennis Demas ("P.O. Demas") proceeded to that address and waited for the green Honda to return. (Id. at ¶¶ 11-12.)

---

[1] These facts are undisputed unless otherwise noted.

Plaintiff, who was unaware of the incident at the time, was shopping in Center City Philadelphia when she called her husband, Pagliaccetti, to pick her up. (Id. ¶ 8.) After Pagliaccetti picked her up, they drove home to 2410 South Marshall Street. (Id. ¶¶ 8, 16.) As Pagliaccetti and plaintiff approached their home, P.O. Colarulo fell in behind the green Honda, verified the plate number, and activated his overhead lights and siren. (Id. ¶¶ 13, 16.) Instead of stopping, Pagliaccetti accelerated and led police on a twelve-block circular vehicle chase. (Id. ¶¶ 14, 24.) Pagliaccetti finally stopped at the corner of Ritner and South Marshall Street, and ran from the vehicle. (Id. ¶¶ 23, 26, 28.) He fell down about ten feet from the vehicle, and was apprehended by P.O. Colarulo. (Id. ¶ 28.) Realizing the P.O. Colarulo had Pagliaccetti secured, P.O. Demas turned toward the Honda and observed plaintiff sitting in the front passenger seat. (Id. ¶ 29.)

P.O. Demas asked plaintiff to step out of the vehicle and place her hands on the car. (Id. ¶¶ 30-31.) He testified that within minutes of plaintiff being removed from the car, a female officer arrived and frisked her; plaintiff was not handcuffed at this time. (Id. ¶¶ 34-35, Ex. F at 14-15.) After plaintiff was frisked, she was handcuffed and placed in the back of the police car. (Defs.' Stmt. ¶ 36.) Plaintiff avers that she was placed in the back of the police car in handcuffs first, and then waited forty-five minutes for a female officer to arrive and frisk her. (Pl.'s Mem. at 10.)

P.O. Demas handcuffed plaintiff because it was felony car stop, there was a report of a gun, and, at the time, he did not know who was involved in the incident with Vaughn. (Defs.' Stmt. ¶¶ 32, 37, 41; Pl.'s Mem. at 2.) He further stated that because the 2400 block of South Marshall Street is a high crime neighborhood, he placed plaintiff in the back of his patrol car for her safety and the safety of the officers. (Defs.' Stmt. ¶ 54.)

Plaintiff was detained for approximately forty-five minutes; she was released after Vaughn arrived and identified Pagliaccetti as the sole perpetrator. (Defs.' Stmt. ¶¶ 41, 44.) Plaintiff disputes this assertion; she states that after Vaughn identified her husband, she remained in the back of the police car until the frisk was complete. (Pl.'s Mem. at 10.)

### III. Legal Standard

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). After this examination, a court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There can be no genuine issue where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also In re IKON Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) ("Only evidence sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case merits consideration beyond the Rule 56 stage." (internal quotation marks omitted)). In order to be sufficient, the evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the

court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Where the evidence presented does not meet this threshold, "[t]he plain language of Rule 56(c) mandates the entry of summary judgment . . . ." Celotex, 477 U.S. at 322.

## IV. Discussion

Defendants argue that they are entitled to summary judgment on plaintiff's claim under 42 U.S.C. § 1983 for the following reasons: (1) plaintiff has not adduced any evidence against the City of Philadelphia; (2) officers possessed reasonable suspicion sufficient to conduct a Terry stop; and (3) neither the officers' conduct nor the length of the detention exceeded the scope of the Terry stop. In the alternative, defendants aver that they are entitled to qualified immunity on the § 1983 claim. Defendants further argue that plaintiff's conspiracy claim under 42 U.S.C. § 1985 fails as a matter of law, and finally, that the Political Subdivision Tort Claims Act bars plaintiff's state law tort claims. The Court addresses each of these arguments in turn.

### A. Plaintiff's Claim of Excessive Force in Violation of 42 U.S.C. § 1983 – Count One

42 U.S.C. § 1983 does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. To state a claim under § 1983, a plaintiff must demonstrate a violation of a federal or constitutional right by a person acting under color of state law. See, e.g., Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir.1997) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)). For the reasons stated below, the Court grants defendants' Motion for Summary Judgment with respect to plaintiff's claim under 42 U.S.C. § 1983 as alleged in Count One of the Complaint.

### 1. No Evidence Supports Plaintiff's Claim Against the City of Philadelphia

Defendants argue that plaintiff, in both the Complaint and after discovery, has failed to produce any evidence demonstrating that the City of Philadelphia played a role in plaintiff's detention. (Defs.' Mot. at 10.) Plaintiff responds that P.O. Demas's testimony—which discusses what he learned at the police academy and his belief that there are police directives regarding an officer's conduct during an investigatory stop—are evidence of the City's "ratification" of Demas's conduct. (Pl.'s Mem. at 8.)

Under Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), municipalities are "included among those persons to whom § 1983 applies." To establish Monell liability, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997); see also City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). A municipal "policy" may arise from the "decisions of [a municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of the County Comm'rs of Bryan County, 520 U.S. at 403-04. A municipal "custom" is a practice that has not been formally approved, but is "so widespread as to have the force of law." Id. at 404.

The Court concludes that plaintiff has not identified "a municipal 'policy' or 'custom' that caused the [her] injury." Bd. of the County Comm'rs of Bryan County, 520 U.S. at 403. While plaintiff presents as evidence P.O. Demas's testimony regarding police directives on the topic of investigatory detentions and his training at the police academy (Pl.'s Mem. at 8), this

evidence does not establish a policy or custom under Monell. Plaintiff's bare assertions and conclusory allegations are insufficient to survive defendants' Motion for Summary Judgment. Fireman's Ins. Co. v. DuFresne, 676 F.3d 965, 969 (3d Cir.1982); see also Anderson, 477 U.S. at 249-50. Accordingly, the Court grants defendants' Motion for Summary Judgment with respect to all claims against the City of Philadelphia.

### 2. Defendants Had Reasonable Suspicion to Conduct a Terry Stop

In her Complaint, plaintiff claims that she was detained without reasonable suspicion (Compl. ¶ 15), an allegation that defendants refute in their Motion for Summary Judgment (see Defs.' Mot. 13-16). In her response, plaintiff presents no evidence to support this allegation, but states only that she "does not object to her being frisked by the police." (Pl.'s Mem. 8.) Because it is unclear from plaintiffs' response whether she takes the position that the Terry stop was unlawful, the Court analyzes this issue.

Law enforcement officers may temporarily detain and investigate citizens if they possess "reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Reasonable suspicion is measured by the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989). In this case, the evidence establishes that police officers responded to a radio flash that a white male driving a green Honda had pointed a gun at Vaughn, a taxi cab driver. Instead of stopping when police officers turned on their lights and sirens, Pagliaccetti first led the officers on a twelve-block chase, and then tried to run to his house after pulling the car over to the side of the street. Unaware of whether plaintiff was a involved in or a witness to the incident with Vaughn, and unsure of gun's location at the time, the officers had reasonable suspicion to conduct an

investigatory stop and to frisk and detain plaintiff temporarily. Thus, the Court concludes that defendants had reasonable suspicion to conduct a Terry stop.

### 3. Defendants Did Not Exceed the Scope of Lawful Conduct During the Terry Stop

Plaintiff avers that the Terry stop exceeded its scope and resulted in a *de facto* arrest that lacked probable cause. (Pl.'s Mem. at 8.) Under Terry v. Ohio, courts "examine 'whether the officer's action . . . was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Sharpe, 470 U.S. 675, 682 (1985) (quoting Terry, 392 U.S. at 20). "[W]hen police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo'" during the course of the stop. United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1995) (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)); see also Maryland v. Wilson, 519 U.S. 408, 414 (1997) ("The risk of harm to both the police and the occupants [of a stopped vehicle] is minimized if the officers routinely exercise unquestioned command of the situation.") (internal citations omitted).

In this case, the Court concludes that defendants' actions—frisking, handcuffing, and detaining plaintiff for forty-five minutes—were "'reasonably necessary to protect their personal safety and to maintain the status quo.'" See Edwards, 53 F.3d at 619 (quoting Hensley, 469 U.S. at 235). Defendants compare their conduct to the actions taken by the police in United States v. McGrath, 89 F. Supp. 2d 569, 578 (E.D. Pa. 2000). In that case, this Court concluded that the police did not use excessive force during the course of a valid Terry stop when they pulled the defendant out of her car, placed her on the ground to subdue her, and then handcuffed her.

Plaintiff in this case, unlike the plaintiff in McGrath, 89 F. Supp. 2d at 578, was neither pulled from her car nor placed on the ground; she was asked to step out of the car and then was frisked, handcuffed, and detained.

In so ruling, the Court finds that plaintiff's averment that she was handcuffed and detained before she was frisked, and that her detention continued after the complainant identified her husband does not present a genuine issue of material fact. Regardless of the order of defendants' actions, they were entitled to frisk, handcuff, and detain plaintiff. See Anderson, 477 U.S. at 248; Edwards, 53 F.3d at 619 (quoting Hensley, 469 U.S. at 235). Alternatively, plaintiff argues that if she was indeed handcuffed after being frisked—as defendants aver she was—it was unnecessary to handcuff her because the frisk showed that she did not have the gun Pagliaccetti pointed at Vaughn. This argument is also unpersuasive. Plaintiff was handcuffed for two reasons: (1) to ensure the officers' safety, and (2) because defendants' possessed reasonable suspicion that plaintiff was in the car during the incident with Vaughn. Because defendants' conduct "'was reasonably related in scope to the circumstances which justified the interference in the first place," their actions did not violate plaintiff's Fourth Amendment rights. See Sharpe, 470 U.S. at 682 (quoting Terry, 392 U.S. at 20).

The Court also rejects plaintiff's assertion that the handcuffs were too tight, thus constituting excessive force. In evaluating the use of handcuffs, the Court must "look at the intrusiveness of all aspects of the incident in the aggregate." Baker v. Monroe Tp., 50 F.3d 1186, 1193 (3d Cir. 1995). In Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004), the Third Circuit held that the circumstances of that case—where the handcuffs were so tight that the defendant began to faint from the pain and lost feeling in his hand—warranted a finding of excessive force. Id.

However, the court cautioned that the opinion should not be "overread" as it was not meant to open the "floodgates to a torrent of handcuff claims." Id. Merely alleging that the handcuffs were too tight, as plaintiff has done in this case, does not warrant a finding of excessive force under Kopec. See id. As such, the Court concludes that no reasonable jury could find in favor of plaintiff on this claim and thus, as to this claim, defendant's Motion for Summary Judgment is granted.

### 4. The Terry Stop Was Not Transformed Into a *De Facto* Arrest

Plaintiff avers that her detention was a *de facto* arrest and that, defendants lacked probable cause to arrest her. (Pl.'s Mem. at 8.) Defendants concede that they lacked probable cause for an arrest, but argue that plaintiff's seizure was an investigatory detention based on reasonable suspicion. (Defs.' Mot. at 14-15.) Plaintiff does not challenge the validity of the Terry stop. The Court concludes that the seizure in this case was a valid investigatory detention under Terry and thus, only reasonable suspicion was required.

Plaintiff's forty-five minute detention did not transform the investigatory detention into a *de facto* arrest. There is no bright line rule for determining when an investigatory stop becomes a *de facto* arrest. Sharpe, 470 U.S. at 685. "However, there is no 'rigid time limitation on Terry stops.' A stop may be too long if it involves 'delay unnecessary to the legitimate investigation of the law enforcement officers.'" United States v. Leal, 235 Fed. App'x 937, 941 (3d Cir. 2007) (quoting Sharpe, 470 U.S. at 685, 687) (internal citation omitted). Thus the crux of the inquiry is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain [plaintiff]." Sharpe, 470 U.S. at 686.

The Court concludes that defendants "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly," and that "it was necessary to detain" plaintiff during that time. Id. at 686. Plaintiff avers that her detention was protracted because defendants were unnecessarily waiting for a female officer to arrive and frisk her. While defendants concede that a male officer could have frisked plaintiff if a female officer was unavailable, P.O. Demas testified that "it's recommended that a female conduct the pat down." (Defs.'s Mot. Ex. F at 14.) Moreover, plaintiff has not cited any authority which states that detention of forty-five minutes is *per se* unreasonable. Rather, courts have routinely held that detentions of longer periods are not excessive. See Leal, 235 Fed. App'x at 942 (holding that an eighty minute detention was not excessive); McGrath, 89 F. Supp. 2d at 569 (same but sixty minutes). Accordingly, the Court concludes that defendants did not unnecessarily delay plaintiff's detention by waiting for a female officer to arrive, and therefore rejects plaintiff's argument that her detention was a *de facto* arrest.

### 5. Defendants' Alternative Defense of Qualified Immunity

Alternatively, defendants argue that the doctrine of qualified immunity bars plaintiff's claim under 42 U.S.C. § 1983 in Count One. However, because the Court concludes that defendants' actions did not amount to a violation of plaintiff's Fourth Amendment rights, it is unnecessary to address the qualified immunity defense. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

### 6. Plaintiff's Fourteenth Amendment Claim

In addition to the Fourth Amendment, plaintiff asserts claims under the Fourteenth Amendment of the United States Constitution in Count One of her Complaint. In Albright v.

Oliver, 510 U.S. 266, 273 (1994), the Supreme Court ruled, "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" Id. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Plaintiff's claim in this case is covered by the protections of the Fourth Amendment. Thus, the Court treats plaintiff's claim as arising only under that "explicit textual source," and will not conduct an analysis under the Fourteenth Amendment.

### B. Plaintiff's Conspiracy Claim Under 42 U.S.C. § 1985 – Count Two

In her Complaint, plaintiff alleged that defendants conspired to prevent her from testifying during the state prosecution of her husband through force and intimidation during her detention. (Compl. ¶¶ 18-19.) Plaintiff further avers that defendant police officers' depositions "made clear" that "each officer acted in concert with one another and the detention and treatment of [plaintiff] was known . . . and condoned by all." (Pl.'s Mem. at 11.) Defendants argue that there is no evidence of a conspiracy to violate plaintiff's constitutional rights. (Defs.' Mot. at 10.)

Plaintiff does not specify the subsection of 42 U.S.C. § 1985 on which she bases her conspiracy claim. (See Compl. ¶¶ 18-19.) Therefore, the Court will analyze the conspiracy claim under § 1985 (2) and (3) only.[2] After examining "the evidence of record in the light most favorable" to plaintiff, the Court concludes that there is no evidence of a conspiracy under § 1985(2) or (3). See Wishkin, 476 F.3d at 184. Therefore, for the reasons stated below, defendants' Motion for Summary Judgment is granted on plaintiff's conspiracy claim as alleged

---

[2] The Court finds § 1985(1) is not applicable in this case because it addresses preventing officers from performing their official duties. See 42 U.S.C. § 1985(1).

in Count Two of the Complaint.

### 1. Conspiracy Under 42 U.S.C. § 1985(2)

"42 U.S.C. § 1985(2) provides a cause of action against persons who conspire to obstruct justice." Messa v. Allstate Ins. Co., 897 F. Supp. 876, 881 (E.D.Pa. 1995). The first clause of § 1985(2) addresses the obstruction of justice in federal court, see Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), and the second clause deals with conspiracies to deny individuals of equal protection of the laws. See Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976). In this case, there is no evidence of a conspiracy, let alone a conspiracy for the purpose of impeding or obstructing justice. In short, plaintiff has not established the existence of a conspiracy under § 1985(2).

### 2. Conspiracy Under 42 U.S.C. § 1985(3)

Under § 1985(3), plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (citing United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983)). In addition, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Scott, 463 U.S. at 835. Plaintiff has failed to establish a claim under § 1985(3), because she has not provided any evidence demonstrating that defendants conspired to deprive her of her civil rights.

### C. Plaintiff's State Law Tort Claims – Counts Three, Four, and Five

Defendants argue that plaintiff's assault,[3] false imprisonment,[4] and false arrest[5] claims—as alleged in Count Three, Four, and Five of the Complaint—are barred by the Political Subdivision Tort Claims Act ("the Act"), 42 Pa. Cons. Stat. Ann. § 8541 *et seq.* (West 2010). (Defs.' Mot. at 27.) With respect to the Act, plaintiff also avers that P.O. Demas's alleged refusal to loosen the handcuffs over a forty-five minute time period is evidence of actual malice or willful misconduct. (Pl.'s Mem. at 11-12.)

For the reasons stated below, the Court concludes that the Act immunizes defendants, in both their official and individual capacities, from plaintiff's state intentional tort claims. Defendants' Motion for Summary Judgment is therefore granted on plaintiff's state law tort claims as alleged in Counts Three, Four, and Five of the Complaint.

### 1. Intentional Tort Claims Against the City of Philadelphia and the Officers in Their Official Capacity

The Political Subdivision Tort Claims Act immunizes municipalities from liability for all state law tort claims. See Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 424 (E.D. Pa. 2000). The Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any

---

[3] To prove a claim of assault, plaintiff must establish that defendants: (1) acted intending to cause a harmful or offensive contact with plaintiff or an imminent apprehension of such a contact; and (2) plaintiff was put in such imminent apprehension. See Sides v. Cleland, 648 A.2d 793, 796 (Pa. Super. Ct. 1994) (citing Restatement (Second) of Torts, § 21 (1965)).

[4] To prevail on the false arrest claim, plaintiff must establish that the process used for the arrest was void on its face or that the issuing tribunal was without jurisdiction; it is not sufficient that the charges were unjustified. See Strickland v. University of Scranton, 700 A.2d 979, 984-85 (Pa. Super. Ct. 1997).

[5] The false imprisonment claim requires proof: (1) that plaintiff was detained; and, (2) that such detention was unlawful. See Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).

other person." 42 Pa. Cons. Stat. Ann. § 8541.  While the Act provides eight exceptions to this grant of immunity, see 42 Pa. Cons. Stat. Ann. § 8542, none are applicable to this case.[6]

The City of Philadelphia is a local agency within the meaning of the Act.  See Fulginiti v. City of Philadelphia, No. 08-1752, 2010 WL 2510369, at *3 (E.D. Pa. June 15, 2010). Accordingly, it is immune from liability for the intentional torts of assault, false imprisonment, and false arrest as alleged in Counts Three, Four, and Five of the Complaint.

Furthermore, in a suit against a government official in his official capacity, "the real party in interest . . . is the governmental entity and not the named official . . . ." Hafer v. Melo, 502 U.S. 21, 25 (1991). Thus, to the extent that in Counts Three, Four, and Five, plaintiff asserts state law claims against defendants Colarulo, Lai, Demas, and Thomas in their official capacities, they are treated as claims against the City of Philadelphia.  Because plaintiff's state law claims against the City of Philadelphia are barred as a matter of law, the claims against defendants Colarulo, Lai, Demas, and Thomas in their official capacities are also barred.

### 2. Intentional Tort Claims Against the Officers in Their Individual Capacity

With respect to plaintiff's individual capacity claims against defendants, the Act states that employees of a local agency are entitled to the same immunity as their employer. See 42 Pa. Cons. Stat. Ann. § 8545.  However, the Act does not shield an employee from liability where his conduct constitutes a "crime, actual fraud, actual malice, or willful misconduct." See 42 Pa.

---

[6] Those eight exceptions to this grant of general immunity are: (1) vehicle liability; (2) the care, custody and control of personal property; (3) the care, custody and control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody and control of animals. See 42 Pa. Cons. Stat. Ann. § 8542(b).

Cons. Stat. § 8550; Kuzel v. Krause, 658 A.2d 856 (Pa. Commw. Ct. 1995). "Willful misconduct, for the purposes of tort law, has been defined by [the Pennsylvania] Supreme Court [as] conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." King v. Breach, 115 Pa. Cmwlth. 355, 365 (1988) (citing Evans v. Philadelphia Transp. Co., 418 Pa. 567 (1965)); see also In re City of Philadelphia Litig., 938 F. Supp. 1278, 1289 (E.D. Pa. 1996).

Plaintiff has not produced any evidence that the officers exhibited actual malice or engaged in willful misconduct during the Terry stop. Thus, the Court concludes that defendants Colarulo, Lai, Demas, and Thomas are immune from plaintiff's state law intentional tort claims in their individual capacities.

## VI. Conclusion

For all of the foregoing reasons, the Court grants defendants' Motion for Summary Judgment and enters judgment in favor of all defendants and against plaintiff.

An appropriate order follows.